UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAULETTE E.,[1] | ) |
| | ) No. 21 CV 360 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) April 2, 2024 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Paulette E. seeks disability insurance benefits ("DIB") asserting that she is disabled by severe cervical degenerative joint disease, left-hip osteoarthritis, carpal tunnel syndrome, hypertension, obesity, and pain. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her disability application. For the following reasons, Paulette's request for a remand is denied, and the Commissioner's final decision is affirmed:

**Procedural History**

Paulette filed a DIB application in February 2016 alleging disability beginning on March 10, 2011, through her date last insured, December 31, 2016. (Administrative Record ("A.R.") 7, 17, 323-26.) At the administrative level, her application was denied initially and upon reconsideration. (Id. at 17, 112-18, 120-29.)

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Paulette's first name and last initial in this opinion to protect her privacy to the extent possible.

Paulette appeared with her attorney at a December 2017 hearing, and an Administrative Law Judge ("ALJ") again denied her claim. (Id. at 17, 72-111, 134-44.) In response to a request for review, the Appeals Council remanded her case to a new ALJ, (id. at 17, 149-51), and a telephone hearing was held in August 2020, (id. at 17, 35-71). Paulette again appeared with her attorney, and both Paulette and a vocational expert ("VE") testified. (Id. at 17, 35-71.) Later that month, the ALJ ruled that Paulette is not disabled. (Id. at 17-28.) Paulette again requested review, and the Appeals Council this time denied the request, (id. at 1-6), making the ALJ's August 2020 decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Paulette then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Analysis

Paulette argues that remand is required because: (1) the ALJ erroneously found her symptom statements to be inconsistent with the record; (2) improperly evaluated opinion evidence; (3) failed to consider the combined effects of her impairments when developing her RFC or build a logical bridge linking the evidence to this RFC assessment; and (4) the Appeals Council failed to consider a treating source opinion Paulette submitted after the ALJ denied benefits. (R. 15, Pl.'s Mem. at 6-15.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the parties' arguments and the record, the court concludes that remand is not warranted.

**A.    Symptom Assessment**

Paulette argues that the ALJ failed to properly evaluate her subjective symptom allegations. (R. 15, Pl.'s Mem. at 7-12.) When assessing a claimant's subjective reports, an ALJ considers objective medical evidence, daily activities, frequency and intensity of pain or other symptoms, medication, treatment, and other measures to relieve pain or other symptoms, and functional limitations. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ's symptom evaluation is generally entitled to great deference because he can observe the claimant's credibility firsthand. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a court will not disturb the ALJ's

evaluation if it is based on specific findings and evidence and is not "patently wrong"—that is, so long as it does not "lack[] any explanation or support." *Id.* at 815-16 (citing *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)); *see also Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (stating that court's review of ALJ's symptom assessment is "extremely deferential").

Paulette asserts that the ALJ "cherry-picked benign findings" while ignoring evidence that conflicted with his conclusion when finding Paulette's symptoms less severe than she alleged. (R. 15, Pl.'s Mem. at 7-8.) By way of example, Paulette points to the ALJ's emphasis on a "single examination" in February 2016 revealing normal findings, including "full range of motion in her cervical spine and no cervical tenderness," "full sensation in her upper extremities including her fingers," "full strength, sensation, and range of motion," and "normal gait and station." (Id. at 8 (citing A.R. 22).) By contrast, Paulette points to other treatment records she says show "significant dire findings," including neck, lumbar, and hand pain with decreased range of motion, strength, and sensation. (Id.) Paulette describes the ALJ's analysis as "skewed" and inconsistent with treatment records, imaging, and medication. (Id. at 8-9.) She further accuses the ALJ of comparing "apples to oranges" and "suggesting that one negative finding cancels out a different positive one." (Id. at 10.) The government responds that the ALJ appropriately considered the evidence and determined that while Paulette has severe impairments, she is capable of performing sedentary work with limitations. (See R. 20, Govt.'s Resp. at 3.) The court agrees with the government.

4

The ALJ discussed Paulette's statements about the limiting effects of her symptoms. (A.R. 21-25.) To be sure, the ALJ noted Paulette's reports that she was injured in 2011 while serving as a postal carrier and has since suffered "constant and aching" pain in her neck, head, hands, mid-back, and left hip. (Id. at 21.) Given her impairments, Paulette says she cannot grip objects for long, can walk with a cane for just 20 minutes and stand for just 20 to 30 minutes, and must lie down three to four times a day for an hour or two. (Id. at 21-22; see also id. at 379-86.)

Next, the ALJ considered the objective medical evidence and treatment relating to Paulette's cervical degenerative disc disease, carpal tunnel syndrome, osteoarthritis, and obesity and hypertension. (Id. at 22-25.) The ALJ acknowledged "decreased cervical lordosis and decreased range of motion in her cervical spine" in connection with Paulette's degenerative disc disease. (Id. at 22 (citing id. at 1253).) He also noted that 2012 and 2013 MRIs show cervical spine abnormalities, and 2014 x-rays of the cervical spine show "degenerative arthritic changes." (Id. (citing id. at 904, 1335-36, 1343-44).) And the ALJ acknowledged that Paulette had "decreased and painful range of motion in her cervical spine and tender cervical paraspinal" in 2014 and early 2015. (Id. at 22-23 (citing id. at 1211, 1217).) But despite continued complaints of neck pain, physical examinations in late 2015 and 2016 showed full range of motion and normal sensation in her cervical spine and full range of motion and strength in her upper extremities. (Id. at 23 (citing id. at 1197-98, 1270-71, 1310).) The ALJ characterized Paulette's degenerative disc disease treatment and

5

corresponding pain as largely "conservative" and found that physical examinations supported limitations but not to the extent Paulette claims. (Id. at 22-23.)

As to Paulette's carpal tunnel syndrome, the ALJ acknowledged findings of decreased motor sensation and strength in her upper extremities during examinations in 2012, 2013, and 2014. (Id. (citing id. at 1210, 1217, 1227, 1250-51).) Yet he also noted that Paulette had normal finger snap, radial, and ulnar pulses, and in 2015 and 2016, she had full strength and sensation in her upper extremities, including her fingers. (Id. at 23-24 (citing id. at 1197-98, 1206, 1269-70).) A March 2016 musculoskeletal examination showed "normal digits and extremities without edema." (Id. at 24 (citing id. at 1285).) And Paulette's treatment—medication and wrist splints—was "conservative," according to the ALJ. (Id.)

With respect to her osteoarthritis, the ALJ noted that Paulette complained of pain and occasional buckling of her left lower extremity when walking, and a July 2012 examination showed tenderness when walking. (Id. (citing id. at 759-60).) However, the ALJ also noted that Paulette's strength and range of motion in her hip abductors and flexors was normal in 2012 and 2013—and examinations in 2015 and 2016 showed normal ambulation, heel walking, and gait and station along with full strength, sensation, and range of motion. (Id. (citing id. at 1197-98, 1148, 1250).) The ALJ noted that Paulette treated her pain with "conservative treatment—Ibuprofen." (Id.)

Finally, the ALJ discussed Paulette's obesity and hypertension, noting records "consistently" showing a body mass index above 40 and a history of elevated blood

pressure. (Id. (citing id. at 641).) Earlier in his decision, the ALJ observed that "the combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately," and that Paulette's obesity "may have an adverse impact on coexisting impairments including impairments of the cardiovascular, musculoskeletal, and respiratory systems" and on her "ability to sustain activity." (Id. at 21.) The ALJ also noted, however, that Paulette had "normal cardiovascular and respiratory examinations." (Id. at 24.)

Paulette asserts that the ALJ's symptom analysis is "misleading" and focuses on normal findings while ignoring conflicting evidence. (R. 15, Pl.'s Mem. at 8.) While the ALJ may not have cited every one of the specific treatment records Paulette references, he addressed many of the abnormal findings, including "decreased cervical lordosis and decreased range of motion" in 2011, (id. (citing A.R. 1253)), tenderness and pain in her left hip when walking in 2012, (id. (citing A.R. 759-60)), decreased strength and sensation in her upper extremities, including the fingers, in 2013 and 2014, (id. at 8-9 (citing A.R. 1210-11, 1227)), and continued complaints of neck and hand pain and occasional buckling of the legs, (id. at 9 (citing A.R. 1195-97)). In short, this is not a case in which the ALJ failed to grapple with the evidence of record. Rather, the ALJ considered the relevant evidence, including Paulette's symptom statements, objective medical evidence, daily activities, pain, treatment, and functional limitations, *see* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and supported his symptom assessment

7

with substantial evidence, (A.R. 21-25). Accordingly, remand is not appropriate on this ground.

**B.     Opinion Evaluation**

Paulette next complains that the ALJ did not assign enough weight to treating physician Dr. Jose Medina's December 2011 opinion. (R. 15, Pl.'s Mem. at 12-14.) A treating source's opinion in cases filed before March 27, 2017, is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quotation and citation omitted). Nevertheless, an ALJ may give such an opinion less weight if he offers "good reasons," *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016), and the Seventh Circuit "uphold[s] all but the most patently erroneous reasons for discounting a treating physician's assessment," *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (quoting *Luster v. Astrue*, 358 Fed. Appx. 738, 740 (7th Cir. 2010)). As such, "[o]nce contrary evidence is introduced . . . a treating physician's opinion becomes just one piece of evidence for the ALJ to evaluate," and the ALJ must then analyze various factors in deciding the weight to afford it, if any. *Ray v. Saul*, 861 Fed. Appx. 102, 105 (7th Cir. 2021). Those factors include: the length, nature, and extent of the treatment relationship; frequency of examination; physician's specialty; types of tests performed; and consistency with and support for the opinion in the record. 20 C.F.R. § 404.1527(c). An ALJ's decision to discount a treating physician's opinion after

8

considering these factors stands if he "minimally articulated" his reasons—"a very deferential standard." *Elder*, 529 F.3d at 415.

Here, Dr. Medina opined in December 2011 that Paulette could work with limitations, including lifting only ten pounds, avoiding repetitive hand movements, and reaching above the shoulders. (A.R. 25 (citing id. at 1254).) The ALJ assigned Dr. Medina's opinion "some weight" because it was consistent with evidence showing, for example, that in 2011 Paulette had "decreased cervical lordosis and decreased range of motion in her cervical spine," "decreased motor sensation and strength in upper extremities including her fingers," and "tenderness in her left hip and pain when walking." (Id. (citing id. at 760, 1250-51, 1253).) But the opinion also assumed Paulette's impairments would improve—and they did, according to the ALJ, as evidenced by "subsequent clinical notes indicat[ing Paulette] had full range of motion in her cervical spine and no cervical tenderness," full strength and range of motion in her upper extremities, and normal gait and station and sensation in her cervical spine. (Id. (citing id. at 1197-98, 1285).) While contemporaneous treatment records supported limitations adopted by Dr. Medina in December 2011, the ALJ determined that later medical findings were inconsistent with that opinion. (See id.); *see also* 20 C.F.R. § 404.1527(c). As a result, the ALJ assigned only "some weight" to Dr. Medina's December 2011 opinion. (A.R. 25.) Because the ALJ provided a good reason for doing so, the ALJ's evaluation of Dr. Medina's opinion does not provide a basis for remand.

9

**C. RFC Assessment**

Paulette contends that the ALJ failed to consider the combined effects of her impairments when assessing her RFC or to build the requisite "logical bridge" between the evidence and his conclusion. (R. 15, Pl.'s Mem. at 10-11, 14-15.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When assessing the RFC, the ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). Where the ALJ does not rely upon medical opinions, he must "thoroughly discuss[] the medical and other evidence," considering each of the claimant's "impairments and related function deficits," *Nina Joyce H. v. Saul*, No. 18 CV 4913, 2020 WL 212771, at *7 (N.D. Ill. Jan. 14, 2020), and "describ[e] how the evidence supports each [RFC] conclusion," *Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011).

Here, the ALJ considered all relevant evidence and found Paulette capable of performing sedentary work with postural and handling and fingering limitations, including that she "cannot climb ladders, ropes, or scaffolds," "can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl," and "can frequently, but not constantly, handle and finger bilaterally." (A.R. 21-25.) Paulette complains that the ALJ provided no "explanation or support" for the RFC he assessed, (R. 15, Pl.'s Mem. at 14), but his written decision belies that argument. As explained, the ALJ

considered the evidence of record, including Paulette's subjective reports, medical evidence, treatment, opinion evidence, and functional deficits related to her impairments. (A.R. 21-25.) After discussing this evidence, the ALJ explained how "the record amply demonstrates that restricting [Paulette] to sedentary work would fully accommodate her severe impairments" of degenerative disc disease, carpal tunnel syndrome, osteoarthritis, obesity, hypertension, and pain, despite the fact that such impairments "no doubt cause[] significant functional limitations." (Id. at 22; see also id. at 23-25.)

The ALJ's decision includes substantial evidence to support the RFC assessment. At step three the ALJ expressly considered "the combined effects of obesity" with Paulette's "musculoskeletal impairments" and observed that obesity could "have an adverse impact on coexisting impairments including impairments of the cardiovascular, musculoskeletal, and respiratory systems . . . [and] limit [Paulette's] ability to sustain activity." (Id. at 21.) The ALJ then "linked each limitation in the [RFC] to [Paulette's] treatment records," as the government points out.[2] (R. 20, Govt.'s Mem. at 6-7 (citing A.R. 21-25).) Because the ALJ adequately explained how the evidence of record supports the RFC he assessed, remand is not warranted. (A.R. 21-25.)

---

[2] Paulette complains that the ALJ should have determined she could handle and finger occasionally, rather than frequently but not constantly as he found. (R. 15, Pl.'s Mem. at 15.) But Paulette does not support this argument with evidence, and even if she had, the court cannot reweigh evidence. *Deborah M.*, 994 F.3d at 788.

11

**D.   Additional Evidence**

Paulette claims the Appeals Council erred when it refused to consider a medical source statement her treating physician Dr. Kamala G. Cotts prepared on October 29, 2020.  (R. 15, Pl.'s Mem. at 12-14.)  The Appeals Council declined to consider the opinion because the ALJ decided Paulette's claim through December 31, 2016, and the opinion was not submitted until nearly four years later.  (A.R. 2.)  Under 20 C.F.R. § 404.970(a)(5), the Appeals Council will "review a case" when it receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision"—but only if "good cause" is shown for not submitting the evidence sooner, *id.* § 404.970(b).  Here, the Appeals Council relied on the fact that the opinion did not "relate to the period" applicable to this matter.  20 C.F.R. § 404.970(a)(5).  The court sees no error here.

Nor did Paulette satisfy the remaining requirements of § 404.970(a)(5), including showing "a reasonable probability" that the outcome of the ALJ's decision would change based on such information, or demonstrate good cause for not submitting Dr. Cotts's opinion before the ALJ issued his decision—nearly two months earlier.  (See R. 20, Govt.'s Mem. at 12-14); 20 C.F.R. § 404.970(b).  Because she admits that Dr. Cotts had been treating her for 15 years, (R. 15, Pl.'s Mem. at 13), her opinion "had long been in existence."  *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2013) ("'New' evidence is evidence 'not in existence or available to the

12

claimant at the time of the administrative proceeding.'"). Paulette therefore fails to offer any plausible reason for remanding on this issue.

## Conclusion

For the foregoing reasons, Paulette's remand request is denied, and the Commissioner's final decision is affirmed.

                                  **ENTER:**

                                  _____
                                  **Young B. Kim**
                                  **United States Magistrate Judge**